USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINGLING FAN,

Plaintiff,

-against-

ANCHOR GENERAL INSURANCE COMPANY,

Defendant.

24-CV-8911 (MKV)

**OPINION AND ORDER GRANDING DEFENDANT'S MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, commenced this action with the filing of a complaint. [ECF No. 1] (the "Initial Complaint"). Defendant Anchor General Insurance Company ("Anchor") answered the Initial Complaint, [ECF No. 12] ("Answer"), and subsequently filed a pre-motion letter seeking leave to file a motion to dismiss pursuant to Rules 12(b)(6) and 12(c). [ECF Nos. 20, 24]. Plaintiff opposed. [ECF No. 25]. Thereafter, the Court issued a Scheduling Order for Defendant's contemplated motion. [ECF No. 26]. In compliance with the Scheduling Order, Plaintiff filed an Amended Complaint. [ECF No. 29] ("AC"). The Amended Complaint named a new Defendant, Permanent General Assurance Corporation ("PGAC"), added five John Does, and attached over seventy pages of exhibits. *Id.*

Thereafter, Defendants filed their motion to dismiss. [ECF No. 32] ("MTD"). The motion is supported by various affidavits and exhibits. [ECF Nos. 32-1–3]. Plaintiff opposed, [ECF No. 38] ("Opp."), and Defendants replied. [ECF No. 43] ("Reply").

In the background, Plaintiff has filed various motions, notices, and proposed Orders, [ECF Nos. 30, 37, 39, 40, 42, 44, 45]—including a motion to strike, [ECF No. 37], a motion for expedited handling of her case, [ECF No. 44], and a request for "emergency relief" essentially seeking an injunction directing Defendants to deposit tens of thousands of dollars with the Clerk of Court,

[ECF No. 30]—which the Court has addressed, [ECF Nos. 36, 47, 48, 49]. The Court has repeatedly warned Plaintiff about the potential for sanctions, specifically noting "that Rule 11 sanctions are applicable to *pro se* litigants and if Plaintiff files letters or motions that are frivolous, vexatious, or completely unsupported by law or fact the Court may impose sanctions in the future." [ECF No. 36] at 3; *see also, e.g.*, [ECF No. 14] at 2; [ECF No. 16] at 3.[1]

## **BACKGROUND**[2]

Plaintiff, a "master practitioner of Traditional Medicine" and "senior software engineer" who "resides outside New York State" but at some point "formerly resided in New York County," alleges that "this action arises from a third-party no-fault auto claim in which Anchor. . . — PGAC's authorized representative—handled the claim for approximately fifteen months and . . . used concealment, fabricated paperwork, and delay to suppress payment." AC at 2 (citation modified).[3] PGAC, for its part, "issued/maintained liability coverage on the at-fault vehicle even though the operator had no U.S. ID including without any driver's licenses with zero English ability, foreseeably enabling unlawful operation and creating a public-safety hazard." AC at 2–3.

This action began after Plaintiff was rear-ended at a stoplight in California. *See* AC at 3. In what followed, Anchor "held itself out as the payor/insurer and funneled all communications through [itself]." *Id.* Anchor subsequently "rebranded as [Third-Party Administrator] after suit began." AC at 4. In reality, PGAC was the at-fault driver's insurer. *See* AC at 2.

---

[1] Given Plaintiff's *pro se* status, the Court declines Defendants' renewed request to impose sanctions. *See* MTD 35–37. While her Amended Complaint likely falls short of the requirements of Federal Rule of Civil Procedure 8, and while her litigation of this matter more generally has approached vexatiousness, the Court does not find that sanctions are warranted.

[2] The Court draws the following facts from the Amended Complaint and accepts them as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Due to formatting irregularities in the Parties' papers, the Court cites to the ECF pagination throughout. Plaintiff's emphases are always omitted unless otherwise noted.

After "schedul[ing] multiple inspections but repeatedly fail[ing] to appear [and] intentionally delaying processing," AC at 5, "Anchor directed Plaintiff to obtain a paid independent inspection [of her car] in New York and later refused reimbursement," AC at 3.

It is not entirely clear which of a few inspections Plaintiff is referring to here.[4] An independent inspection was conducted at a Toyota dealership at a cost of $430.28, and the results, which are attached to the Amended Complaint, appear to reflect $8,704.97 in estimated repair and replacement costs (the "Toyota Appraisal"). *See* AC at 5, 66–68.[5] Previously, an entity called Sedgwick Appraisals ("Sedgwick") had conducted an inspection "for . . . [PGAC]" and determined that the net cost of repairs to Plaintiff's vehicle was $623.84 (the "Sedgwick Inspection"). AC at 44–49 (citation modified). After the Toyota Appraisal, Anchor issued an "Unrelated Prior Damage" document, reflecting the same inspection date and workfile ID as the Sedgwick Appraisal, but written by a different author, and quoting the "Total Cost of Repairs" at $13,646.73 (the "Unrelated Prior Damage Letter"). AC at 4, 51–55. Plaintiff alleges that the Unrelated Prior Damage Letter—and possibly also the Sedgwick Inspection, although it is very difficult to tell from the Amended Complaint—was "back-dated." AC at 4–7.

The purpose of the alleged scheme, which seems to have involved "artificially low labor figures," AC at 3; *see also* AC at 4–5, was to "depress payment," AC at 5. In short, while "Defendants are 100% responsible," they "for ~15 months . . . refused to pay, induced Plaintiff to pay for an inspection and then refused reimbursement, appropriated her inspection results to fabricate/back-date their own 'report,' and lowballed the claim with implausible figures." AC at 3.

---

[4] In addition to the inspections discussed next, Defendants submit an additional, unsigned and undated report that was apparently prepared and provided to them by Plaintiff. *See* [ECF No. 32-3] at 3 ¶ 11, 41–43.

[5] The Court notes that Plaintiff has annotated and redacted various exhibits attached to her Complaint without seeking or receiving leave to do so. Defendants do not mention this, but have filed, among other documents, what seem to be unaltered versions of the exhibits attached to the Amended Complaint. *Compare* AC at 66–68 *with* [ECF No. 32-3] at 35–37 (but note, on page 37, the persistence of some annotation that appears to pre-date this litigation).

Plaintiff also alleges in the Amended Complaint that Anchor has made various misrepresentations during the litigation of this case and that, "three weeks after filing, an unidentified group associated with an illegal lockout at Plaintiff's residence took possession of property and removed legal/electronic materials related to this case." AC at 3 (citation modified).

Plaintiff brings claims for fraud, violations of New York General Business Law Section 349, unjust enrichment, bad faith, negligence, violations of California Civil Code Section 1714 and California Vehicle Code Section 12500(a) (driving without a license), and civil RICO violations. *See* AC at 4–8. She invokes the subject-matter jurisdiction of this Court under Title 28, United States Code, Sections 1331 (federal question) and 1332(a) (diversity). *See* AC at 2.

The Court begins with the threshold questions of personal jurisdiction and venue and, since venue does not lie in this District, proceeds no further.

**STANDARD**

The Court applies "the same standard of review in Rule 12(b)(3) dismissals for improper venue as . . . in Rule 12(b)(2) dismissals for lack of personal jurisdiction."[6] *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). The Court, on such motions, need not confine itself to the pleadings. *See Casville Invs., Ltd. v. Kates,* No. 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Glasbrenner*, 417 F.3d at 355; *DiStefano v. Carozzi N. America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of personal jurisdiction" and venue. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986). "But if the court holds an evidentiary hearing . . . the plaintiff must demonstrate personal jurisdiction by a preponderance of

[6] The Court, accordingly, does not dwell on Defendants' failure to move formally under Rule 12(b)(3), since they clearly request dismissal on the basis of improper venue. *See* MTD at 31 ("As such, this matter should also be dismissed from the Southern District of New York as the proper venue for this matter is in California - assuming of course the plaintiff's claims had any merit to begin with.").

the evidence." *Id.* The Court must "construe the pleadings and affidavits in the light most favorable to [Plaintiff], resolving all doubts in [her] favor." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

**ANALYSIS**

Defendants contend that the Court lacks personal jurisdiction over them, and that, even if they are subject to the Court's jurisdiction, venue is improper in this District. MTD at 30–33. Because venue does not lie in this District, the Court does not reach either the personal-jurisdictional question or the merits of this case.

**I. Waiver or Forfeiture**

Preliminarily, the Court must address the possibility that Anchor waived or forfeited its personal jurisdiction and venue objections in answering the Initial Complaint.[7] *See Roberts v. Bennaceur*, 658 F. App'x 611, 616 n.5 (2d Cir. 2016) (summary order) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment of a known right," as under Federal Rule of Civil Procedure 12(h)(1). (citation modified)). "Defenses that involve the core issue of a party's willingness to submit a dispute to judicial resolution, such as lack of personal jurisdiction[ or] improper venue . . . are not automatically revived by the submission of an amended complaint if initially waived." *Carroll v. Trump*, 88 F.4th 418, 432 (2d Cir. 2023) (citation modified), *adhered to*, 151 F.4th 50 (2d Cir. 2025).

Arguably, Anchor did not expressly "include" its personal jurisdiction and venue defenses "in [its] responsive pleading" as required by Federal Rules of Civil Procedure 12(h)(1)(B)(ii). *See* Answer ¶¶ 19–31 (setting forth thirteen affirmative defenses without clearly asserting lack of personal jurisdiction or improper venue). Nevertheless, Anchor did "den[y] each and every

[7] PGAC was not named in the Initial Complaint and has filed no answer in this case.

allegation set forth" in the Initial Complaint concerning venue, *id.* ¶ 2 (citation modified), and ultimately sought dismissal, *id.* at 7.

Thereafter, Anchor expressly raised the venue issue—but not the issue of personal jurisdiction—in its pre-motion letter seeking leave to file a motion to dismiss the Initial Complaint. *See* [ECF No. 20] at 2–3 (noting that "the Southern District of New York is not even the proper venue for this matter" because "the underlying subject accident occurred in California, the opposing driver resides in California, Anchor General Insurance Company is headquartered in California, and the plaintiff does not even reside in New York as is evident from plaintiff's recent change of address filing with the Court."). Subsequently, once both Defendants had been named in Plaintiff's Amended Complaint, they made their venue and personal jurisdiction arguments in tandem. *See* MTD at 30–33.

With respect to personal jurisdiction, then, Anchor has not met even the bare minimum requirement to avoid waiver by "stat[ing] the defense in its first responsive pleading," even if, for example, "only in a footnote" without "any rigorous degree of specificity." *Roberts*, 658 F. App'x at 616. Both Defendants have, however, preserved their venue arguments. *Cf. Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999) (finding forfeiture only where defendant "participated in pretrial proceedings but ***never*** moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so ***during the four-year interval after filing its answer***" (emphases added)).

Since the personal jurisdiction arguments of PGAC were preserved by the happy accident that it had not been named until the filing of the Amended Complaint, the Court could address the issue with respect to that Defendant only. In this connection, the Court does note that, while their briefing is sparse and largely unhelpful, the personal jurisdiction arguments available to the

Defendants do appear to be strong. *See* MTD at 21 ("The only event that occurred in New York was the [Sedgwick Inspection], which was performed by an adjuster from Sedgwick Claims Services."); MTD at 13 (asserting that the Defendants "were not even involved in the process of assessing [Plaintiff's] claim," which is the sole basis of this suit); [ECF No. 32-3] at 4 ¶ 19 (swearing that Plaintiff "named the wrong entity in the instant action"); *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (noting, as axiomatic, that "the unilateral activity of another party or third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." (citation modified)). Plaintiff, for her part, does not attempt to put forward a basis upon which personal jurisdiction could be exercised—indeed, she does not respond to Defendants' arguments on this score at all, save to ask half-heartedly for "jurisdictional/venue discovery." Reply at 7, 8.

Nevertheless, the Court is not inclined to expound the nuances of New York's personal jurisdiction law in a situation like this one. As noted, the argument was waived by one of the Defendants, and the briefing is poor. Furthermore, even if the Court found that it lacked personal jurisdiction over PGAC, Plaintiff would likely be granted leave to amend her Complaint again, since defense counsel failed to identify the issue in their pre-motion letter. *See* [ECF No. 20]; [ECF No. 26] at 1 (warning Plaintiff that the Amended Complaint would be her "last opportunity to amend in response to any issue raised in the parties' pre-motion letters" (emphasis omitted)); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (citation modified)).

Against this backdrop, "there is a sound prudential justification" to "reverse the normal order of considering personal jurisdiction [before] venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *see also Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (citing *Leroy*, 443 U.S. at 180); *Cavit Cantina Viticoltori Consorzio Cantine Sociali Del Trentino Societa' Cooperativa v. Browman Family Vineyards, Inc.*, 656 F. Supp. 2d 421, 424 (S.D.N.Y. 2009) (same).

## II. Venue

Pursuant to Title 28, United States Code, Section 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiff argues that "[v]enue is proper in the Southern District of New York . . . because a substantial part of the events giving rise to these claims—including Defendants' claim-handling, communications, and deceptive acts—occurred in New York County." AC at 2.

To base venue upon Section 1391(b)(2), the Plaintiff must establish that "a substantial part of the underlying events took place" in this District.[8] *Glasbrenner*, 417 F.3d at 356 (citation modified). The Court, moreover, must "take seriously the adjective 'substantial,'" mindful that "it

[8] "The Southern District comprises the counties of Bronx, Dutchess, New York, Orange, Putnam, Rockland, Sullivan, and Westchester and concurrently with the Eastern District, the waters within the Eastern District." 28 U.S.C. § 112(b).

would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Id.* at 357 (citation modified).

Moreover, while "the concepts of personal jurisdiction and venue are closely related," they are "nonetheless distinct." *United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969) (citation modified). Most obviously, while the personal jurisdiction inquiry focuses on a defendant's relationship to "the forum ***State***," *American Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024) (emphasis added), the venue analysis turns on the lawsuit's relationship to the "judicial ***district***," 28 U.S.C. § 1391(b) (emphasis added).

"Plaintiff's vague and conclusory assertions, without any supporting facts, are insufficient to demonstrate that venue is proper in this district." *Moody v. Broadview Fed. Credit Union*, No. 26-CV-0282 (LTS), 2026 WL 279660, at *1 (S.D.N.Y. Feb. 3, 2026) (collecting cases), *motion for relief from judgment denied*, No. 26-CV-0282 (LTS), 2026 WL 412116 (S.D.N.Y. Feb. 12, 2026). Indeed, not only has Plaintiff failed to allege or adduce evidence establishing that a "substantial part" of the events giving rise to this case took place in this District—she has hardly identified anything that happened here at all.

The accident happened in California, AC at 3, the Unrelated Prior Damage Letter and the Sedgewick Inspection upon which it was apparently based both reflect an "Inspection Location" of "Jackson Heights, NY 11372," [ECF No. 32-3] at 28, 49, and the Toyota Appraisal reflects an address for a Toyota dealership in "South Richmond, NY 11419," AC at 66. Moreover, as Plaintiff concedes, "the policy was issued to a California insured; Defendants are California-based; and the claim-handling originated from California." Opp. at 7. The Court takes judicial notice of the fact that none of these places is within this District. *See* Fed. R. Evid. 201(b).

Plaintiff does allege that she "formerly resided in New York County." AC at 2; *see also* [ECF No. 2] at 2. Indeed, a nearly identical New York County address is provided on her Toyota Appraisal, *see* [ECF No. 32-3] at 36, and the same one is listed on certain communications related to her insurance claim, *see id.* at 45, 47, 74. But she has since supplied the Court with an address in Washington, D.C, *see* [ECF No. 17], while other communications related to her insurance claim list a Maryland address, *see* [ECF No. 32-3] at 13, 15, and the Unrelated Prior Damage Letter and the Sedgewick Inspection list Plaintiff's then-residence as being in "Jackson Heights, NY 11372," [ECF No. 32-3] at 28, 49, as do other communications related to her insurance claim, *see id.* at 24, 26.

In short, without refusing to "take seriously the adjective 'substantial,'" the Court cannot find that Plaintiff has made a showing—even a *prima facie* one—that a "a substantial part of the underlying events took place" in this District. *Glasbrenner*, 417 F.3d at 356–57 (citation modified).

Plaintiff now suggests, in the alternative, that transfer would be appropriate—presumably envisioning litigation in some California district. *See* Opp. at 7 (listing California connections and suggesting that "transfer" is an "appropriate remed[y]"), 8 (requesting, in the alternative and "if necessary," "transfer"). But the Court cannot find that transfer to another district would "be in the interest of justice," particularly because, without meaningful briefing on the issue, the Court cannot say where, specifically, the action "could have been brought." 28 U.S. Code § 1406; *cf. World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 666 (S.D.N.Y. 2005) ("Because this Court is not convinced that this action 'could have been brought' in either district, and because such a determination is best left to the courts in those jurisdictions, this Court will not transfer this action. . . . Moreover, this Court does not think that transferring this action would be in the interest

of justice. Plaintiff seems to have been aware of the doubtful justification for jurisdiction in New York since the onset of this action, and has repeatedly raised the prospect of simply transferring this action elsewhere in order to cure these deficiencies.").

Moreover, because Plaintiff was warned that the Amended Complaint would be her "**last opportunity to amend in response to any issue raised in the parties' pre-motion letters**," [ECF No. 26] at 1 (emphasis original), including improper venue, [ECF No. 20] at 2–3, it is clear that further amendment would be futile.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Amended Complaint is DISMISSED without prejudice to refiling in an appropriate venue. The Clerk of Court is respectfully requested to terminate docket entry number thirty-two and close this case.

**SO ORDERED.**

**Date: September 23, 2026**
**New York, NY**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**